IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUAN V. LE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 02-CV-3368 |
| KENNETH JOHN ELWOOD | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S BRIEF IN OPPOSITION TO PLAINTIFF'S PETITION FOR REVIEW OF HIS APPLICATION FOR NATURALIZATION**

I. <u>INTRODUCTION</u>

This is an action for admission to citizenship under 8 U.S.C. § 1421(c). Plaintiff Tuan V. Le is a native and citizen of Vietnam and lawful permanent resident of the United States. Plaintiff was born on February 20, 1973 in Vietnam. On July 20, 1993, plaintiff became a permanent resident of the United States.

On December 28, 1996, plaintiff was arrested for driving under the influence by the Philadelphia Police Department when his motor vehicle was stopped at or near 1000 S. 16th Street, Philadelphia, PA. At the time of his 1996 arrest, plaintiff had a blood alcohol content of .16 percent. The legal limit in Pennsylvania for blood alcohol content is .10 percent. Plaintiff was charged with violation of Pennsylvania Crimes Code Section 3731- a misdemeanor of the second degree. On February 24, 1997, plaintiff was found guilty and was sentenced on May 12, 1997 to 48 hours confinement, one year

probation and required to complete alcohol safe driving school. In addition, his driver's license was suspended for one year. (See court records at Exhibit 1). Plaintiff complied with his sentence and regained his driver's license.

On November 13, 1999, plaintiff was again arrested for driving under the influence by the Philadelphia Police Department when his motor vehicle was stopped at or near 800 East Allegheny Avenue, Philadelphia, PA. At the time of plaintiff's 1999 arrest, his blood alcohol content level was .186 percent, nearly twice the legal limit. Plaintiff was charged again with violation of Pennsylvania Crimes Code Section 3731. On June 14, 2000, Le was adjudicated guilty on the charge. On January 11, 2001, the judge sentenced Le to 48 hours confinement, one year probation and was required to complete alcohol safe driving school. In addition, his driver's license was suspended for one year. (See court records at Exhibit 2). He has since completed his sentence and regained his drivers' license.

On October 3, 2001, plaintiff applied for naturalization by submitting a form N-400 and supporting documents to the Immigration & Naturalization Service (INS) at Philadelphia. (See Exhibit 3). On May 16, 2001, plaintiff appeared for an examination before an INS Officer regarding his application for naturalization. On June 15, 2001, the INS denied plaintiff's application for naturalization because he failed to establish that he was a person of "good moral character." Specifically, the INS noted that plaintiff had been arrested twice for driving under the influence in the five years preceding his application, and that he provided false testimony to the INS in that he answered "no" on

the naturalization application when asked if he had been arrested.  (See Exhibit 4).  On July 13, 2001, plaintiff filed a request for a hearing on the naturalization decision.  (See Exhibit 5).  Le appeared for a hearing on March 29, 2002, along with his present counsel.  At the end of the hearing, the naturalization officer gave a verbal denial on plaintiff's application.  On July 8, 2002, the INS issued a formal written denial of plaintiff's application for naturalization.  (See Exhibit 6).  In the written decision, the INS found that plaintiff lacked "good moral character" because of his two arrests for driving under the influence.  The written decision did not rely on the false testimony as a basis for denying plaintiff's application.

        Plaintiff has filed this action in the Eastern District of Pennsylvania to seek review of the INS's denial of his naturalization application.  The court has jurisdiction pursuant to 8 U.S.C. § 1421(c) to conduct a de novo review of plaintiff's application.

II.  ARGUMENT

    A.  Standard of Review On An Application For Naturalization

A person whose application for naturalization is denied after a hearing with an immigration officer may seek review of such denial in United States District Court. See 8 U.S.C. § 1421(c) (1994); 8 C.F.R. § 336.9 (1999). The court's review is de novo and the court shall make its own findings of fact and conclusions of law. Id. At the request of the petitioner, the court shall conduct a hearing de novo on the application. Id.

There is no natural or inherent right to become a United States citizen. Puciaty v. INS, 125 F.Supp.2d 1035, 1038 (D.Haw. 2000). Citizenship is a "gift or a privilege which the government may refuse or may grant on such conditions as it may prescribe." Schneiderman v. United States, 320 U.S. 118, 131 (1943). "[T]he Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship." Berenyi v. District Director, 385 U.S. 630, 637 (1967).

In a proceeding for naturalization, because the applicant is seeking to receive all the privileges and benefits of citizenship which cannot lightly be taken away, "it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." Berenyi, supra, 385 U.S. at 637; see also 8 U.S.C. § 1427(e); 8 C.F.R. §§ 316.2(b) & 316.10(a)(1). "No alien has the slightest right to naturalization unless all statutory requirements are complied with ...." U.S. v. Ginsberg, 243 U.S. 472, 475 (1917). All doubts are resolved in favor of the United States

and against the petitioner.  Berenyi, supra, 385 U.S. at 637; Puciaty, supra, at 1038.

The "congressionally imposed prerequisites" for naturalization are found generally in 8 U.S.C. § 1427(a), which provides: "No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) ... has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ..., (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character...."  8 U.S.C. § 1427(a).[1]

> B.    The "Good Moral Character" Requirement

Le was denied naturalization by the INS because he failed to establish the requirement of "good moral character."  See 8 U.S.C. § 1427(a)(3) (requirement for naturalization is that during the statutory period, the alien must be "person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.")[2]

The statute provides that an applicant for naturalization shall not be found

---

[1] There is no dispute in this case that Le has met the first and second requirements.

[2] The 'statutory period" refers to the five-year period immediately preceding the filing of the petition.  In this case, Le's petition was filed with the INS on October 3, 2001.

to be a person of "good moral character" if the applicant is or was:

(1) a habitual drunkard;

(2) a person illegally connected with prostitution, who helps to smuggle aliens, or is a previously removed alien;

(3) convicted of, or admits committing, crimes listed in 8 U.S.C. § 1182(A)--(C);

(4) a person whose income is derived principally from illegal gambling;

(5) a person convicted of two or more gambling offenses during the statutory period;

(6) a person who gave false testimony to obtain benefits under the INA;

(7) a person confined to a penal institution for 180 days or more by any conviction, even if the offense did not occur within the statutory period;

(8) a person convicted of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), at any time.

See 8 U.S.C. § 1101(f).

Federal regulations provide an even lengthier list of conduct for which an applicant shall be automatically found to lack good moral character. See 8 C.F.R. § 316.10 (overlaps a great deal with listed offenses in 8 U.S.C. § 1101(f), and adds actions such as failure to support dependents, polygamy, and having an extramarital affair which tended to destroy an existing marriage).

Neither the list of conduct in § 1101(f) or that in the regulations is

exhaustive. "In other words, the inquiry into whether a person possesses good moral character does not end when the decision maker reaches the bottom of these lists." Puciaty v. INS, 125 F.Supp.2d 1035, 1039 (D.Haw. 2000). As the statute specifically states, "the fact any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f). Similarly to § 1101(f), the regulations make clear that the listed elements are not an exhaustive list of conduct precluding a finding of good moral character. See 8 C.F.R. § 316.10(a)--(b) (determinations of good moral character are made on a "case-by-case basis" and take into account the elements enumerated in § 316.10(b) and the standards of the average citizen in the community of residence). See also Charles Gordon et al., 15 Immigration Law and Procedure, Interpretations of the Immigration and Naturalization Service, § 316.1(e), at 130 (1993) ("Good moral character ... has been interpreted as meaning character which measures up to the standards of average citizens of the community in which the applicant resides."). Therefore, "when making a determination of good moral character, [the court] should look to the statute and the regulations, but if conduct complained of does not fall within their enumerated categories, it must continue its analysis by looking to the 'standards of average citizens.'" Puciaty, 125 F.Supp.2d at 1039.

    C.    <u>Plaintiff Has Not Met His Burden of Proving "Good Moral Character."</u>

Plaintiff's convictions for drunk driving do not fall within the enumerated

provisions in 8 U.S.C. § 1101(f).³  However, the convictions show that Le has "committed unlawful acts that adversely reflect upon [his] moral character." 8 CFR 316.10(b)(3)(iii).  Drunk driving is clearly in violation of the standards of average citizens in our society.  Indeed, it is criminal conduct, and punished accordingly.  In addition, drunk driving is specifically addressed in the guidance the INS publishes for members of the public seeking information about the naturalization process.  In its publication, "Who is Eligible for Naturalization," the guide explains that "to be eligible for naturalization you must be a person of good moral character."  The guide then has a section listing "Examples of Things that Might Show a Lack of Good Moral Character."  The list specifically includes "habitual drunkenness <u>or drunk driving</u>."  (emphasis added).  (See Exhibit 7, p.17).

      Moreover, some perspective about the immense social consequences of drunk driving is in order.  According to data from the National Highway Traffic Safety Administration (NHTSA), in 2000, 17,380 people were killed in alcohol-related crashes - an average of one every half-hour.  These deaths constituted approximately 41 percent of the 41,945 total traffic fatalities that year.  In 2001, 17,448 people were killed in crashes involving alcohol, representing 41 percent of the 42,116 people killed in all traffic crashes. (New Fatality Analysis Reporting System, NHTSA, 2002).  In Pennsylvania in

---

³    At this time, there is no evidence in the record that plaintiff is a "habitual drunkard" other than the drunk driving convictions; however, the court may examine this issue further during the hearing.  See 8 U.S.C. § 1101(f)(1).

2001, there were 1,530 traffic related deaths, 663 of which were related to alcohol (43 percent). (See statistics at Exhibit 8).

Some information relating to blood alcohol concentration also adds perspective to the nature of Le's conduct. At blood alcohol concentration levels as low as 0.02 percent, alcohol affects driving ability and crash likelihood. The probability of a crash begins to increase significantly at 0.05 percent blood alcohol concentration and climbs rapidly after about 0.08 percent. (Insurance Institute for Highway Safety, Q&A Alcohol: General, November 2001). At .08 blood alcohol content, virtually all drivers, even experienced ones, are impaired. (NHTSA, April 2002).[4] Thirty-one percent of all traffic fatalities occurred in crashes in which at least one driver or non-occupant had a blood alcohol content of 0.10 or greater. (NHTSA, 2000).

According to the NHTSA, an average 170-pound man must have more than four drinks in one hour on an empty stomach to reach a .08 percent blood alcohol concentration (BAC) level - a level that exceeds what is commonly accepted as social drinking. In both of his drunk driving convictions, Le was seriously over the legal limit, the first time half again over the limit, and the second time nearly twice over the limit.

It is clear that drunk driving is contrary to the basic standards set forth in our society. Even the beer company commercials during the Superbowl advocate the use

---

[4] In Pennsylvania (and 14 other states), the legal limit for blood alcohol content is .10; in 34 states and the District of Columbia, the legal limit is .08.

of "designated drivers" among those who are out drinking away from home. To allow Le to be caught engaging in such conduct twice within the five years preceding his application, and still grant him one of the most sought after privileges in the world, that of becoming a United States citizen, would undermine the strict guidelines set forth by Congress.

There is scant case law dealing with whether drunk driving is evidence of not having good moral character in a naturalization proceeding. However, at least one court found that a man could not be naturalized in part because of his driving while intoxicated. See In re Swensen, 61 F.Supp. 376, 377 (D.Ore. 1945).[5] Moreover, as the Court noted in Swensen, those who are applying for naturalization are subject to a higher standard of conduct than a native-born citizen:

> A native-born citizen need not be literate to exercise his civil rights, unless the state law so requires. But an alien must

---

[5] In one other case, the Court reviewed the INS' denial of a petition for naturalization because the applicant was on probation for a drunk driving conviction. Jiminez v. INS, 153 F.Supp.2d 1105 (D.Alaska 2001). However, the basis for the INS' denial in that case was its regulation stating that "an application will not be approved until after the probation . . . has been completed." 8 CFR 316.10(c)(1). There was no specific finding made by the INS or the Court about whether Jiminez lacked good moral character. Id. at 1107. It is unclear whether Le had actually completed his probation at the time he filed his application for naturalization, as he was not sentenced until January 11, 2001. (See Exhibit 2, p.2). However, it does not appear that the INS relied on this regulation in rejecting his application, and at the current time, Le has completed his probationary period.

> know the English language. . . . No matter how well educated he might be in other languages, ignorance of English is a bar to citizenship. A native-born citizen may be immoral . . . . But an alien must be of good moral character before he can be admitted to citizenship. . . . More, a native-born citizen may be opposed to the principles of our constitutional government. And, unless he actually advocates its overthrow, by force, he may go unmolested. But an alien must be 'attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States. 8 U.S.C.A. § 707.

<u>In re Swensen</u>, 61 F.Supp. 376, 377 (D.Ore. 1945). Given the standard Le must meet, the Court should not shrug away plaintiff's actions as minor infractions.

That Le's offenses were misdemeanors, and that no one actually was harmed during his drunk driving sprees is of no moment; the fact is that Le exhibited extraordinarily poor judgment on at least two different occasions, driving while intoxicated at levels that could easily have resulted in tragedy. Such conduct is properly considered not of "good moral character." The INS examiners correctly construed Le's conduct as indicative of a lack of good moral character, and the government urges the Court to do so as well.

D.  <u>Plaintiff Must Establish That He Understands the English Language</u>

Initially, Le answered "no" to the question on the naturalization application with regard to whether he had ever been arrested. At the first naturalization hearing, Le's drunk driving convictions were revealed, and the INS learned that he had improperly answered the question on the application. Initially, the INS denied Le's application for two reasons: (1) because of the drunk driving convictions; and (2) because he had provided false testimony on the application. (See Exhibit 4). At the second hearing before the naturalization examiner, Le submitted an affidavit from his sister, explaining that she had assisted Le with the application, and that they had misunderstood the question, believing that an arrest for drunk driving fell into the category for traffic arrests that did not need to be revealed. In its final decision, the INS relied only on the drunk driving convictions as a basis for finding a lack of good moral character; it did not mention the original finding about submitting false testimony. (See Exhibit 6).

On its de novo review of the evidence, even if the Court finds that Le did not intentionally submit false information to the INS in an attempt to gain citizenship, the Court must also find that Le satisfies all of the congressionally mandated statutory requirements for naturalization. Pursuant to 8 U.S.C. § 1423, Le must demonstrate "an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language: Provided, That the requirements of this paragraph relating to the ability to read and write shall be met if the applicant can read or

write simple words and phrases to the end that a reasonable test of his literacy shall be made and that no extraordinary or unreasonable condition shall be imposed upon the applicant." 8 U.S.C. § 1423(a)(1). The Court should analyze the circumstances surrounding the filing of Le's application, and his apparently limited English language skills, in making a decision on Le's naturalization petition.[6] See Poka v. INS, 2002 WL 31121382, *4 (D.Conn. Sept. 19, 2002) (court found that although Poka had not intended to mislead on his application, he had "not demonstrated an understanding of the English language" and the court denied his application).

---

[6] By his own admission, plaintiff's English skills are limited. See Exhibit 5, Request for a Hearing on a Decision in Naturalization Proceeding, p.2).

D. <u>Denial of Plaintiff's Application for Naturalization is Without Prejudice For Him to Reapply After Five Years from the Date of His Last Conviction</u>.

This Court's decision to deny Le's admission to citizenship would not have a lasting consequence. Le is free to apply again for naturalization after a decent interval, long enough to show that he has been remorseful for past actions and will not repeat them. After the five-year statutory period has passed (that is, five years after the latest offense of conviction), and assuming that he has not been re-arrested, Le would then enjoy a presumption of good moral character and his petition would quite likely be approved. <u>See</u> <u>DeLuca v. Ashcroft</u>, 203 F.Supp.2d 1276, 1281 (M.D. Ala. 2002) (denying application for naturalization because of crime of moral turpitude (theft) committed within the statutory period, but finding that the alien was remorseful for previous mistake, and inviting her to apply again at the expiration of five years from the date of conviction); <u>Santamaria-Ames v. INS</u>, 104 F.3d 1127, 1132 (9th Cir. 1996)("the ultimate fact to be determined, and the only material one, is his moral character within the specified period"); <u>Gatcliffe v. Reno</u>, 23 F.Supp.2d 581, 585 (D.V.I. 1998)(improper for INS to deny petition for naturalization based solely on his convictions outside the five-year statutory period); <u>see also</u> <u>Poka</u>, <u>supra</u>, at *4 (D.Conn. Sept. 19, 2002)(denying application without prejudice, and noting that Poka may reapply at any time for naturalization and demonstrate his understanding of the English language).

III.　CONCLUSION

For the foregoing reasons, the government requests that after the Court holds a hearing on plaintiff's application for naturalization, the Court should apply the standard of law set forth in this memorandum, and deny Le's application for naturalization.

                                               Respectfully,

                                               PATRICK L. MEEHAN
                                               United States Attorney

                                               JAMES G. SHEEHAN
                                               Assistant United States Attorney
                                               Chief, Civil Division

Dated:  October 25, 2002

                                               SUSAN R. BECKER
                                               Assistant United States Attorney
                                               615 Chestnut Street, Suite 1250
                                               Philadelphia PA 19106-4476
                                               (215) 861-8310 Telephone
                                               (215) 861-8349 Facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of October, 2002, I caused a true and correct copy of the foregoing Defendant's Memorandum of Law in Opposition to Plaintiff's Petition for Review of Application for Naturalization to be served by first-class mail, postage prepaid, upon the following:

>Joseph I. McDevitt
>Suite 400, Four Tower Bridge
>200 Barr Harbor Drive
>West Conshohocken, PA 19428
>
>Attorney for Plaintiff

_____
Susan R. Becker