IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUAN V. LE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 02-CV-3368 |
| KENNETH JOHN ELWOOD | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendant, Kenneth Elwood, District Director of the Immigration and Naturalization Service ("the Service"), submits these findings of fact and conclusions of law in connection with the hearing scheduled for Thursday November 21, 2002 at 10:00 a.m. relating to plaintiff Tuan V. Le's application for citizenship.

I.   FINDINGS OF FACT

    1.   Plaintiff Tuan V. Le is a native and citizen of Vietnam.

    2.   Plaintiff was born on February 20, 1973 in Vietnam.

    3.   On July 20, 1993, plaintiff became a permanent resident of the United States.

4. On December 28, 1996, plaintiff was arrested for driving under the influence by the Philadelphia Police Department when his motor vehicle was stopped at or near 1000 S. 16th Street, Philadelphia, PA.

5. At the time of his 1996 arrest, plaintiff had a blood alcohol content of .16 percent.

6. The legal limit in Pennsylvania for blood alcohol content is .10 percent.

7. Plaintiff was charged with violation of Pennsylvania Crimes Code Section 3731- a misdemeanor of the second degree.

8. On February 24, 1997, plaintiff was found guilty and was sentenced on May 12, 1997 to 48 hours confinement, one year probation and required to complete alcohol safe driving school. In addition, his driver's license was suspended for one year.

9. On November 13, 1999, plaintiff was again arrested for driving under the influence by the Philadelphia Police Department when his motor vehicle was stopped at or near 800 East Allegheny Avenue, Philadelphia, PA.

10. At the time of plaintiff's 1999 arrest, his blood alcohol content level was .186 percent, nearly twice the legal limit.

11. Plaintiff was charged again with violation of Pennsylvania Crimes Code Section 3731.

12. On June 14, 2000, Le was adjudicated guilty on the charge. On January 11, 2001, the judge sentenced Le to 48 hours confinement, one year probation

and was required to complete alcohol safe driving school. In addition, his driver's license was suspended for one year.

13. On October 3, 2001, plaintiff applied for naturalization by submitting a form N-400 and supporting documents to the Immigration & Naturalization Service (INS) at Philadelphia.

14. On May 16, 2001, plaintiff appeared for an examination before an INS Officer regarding his application for naturalization.

15. On June 15, 2001, the INS denied plaintiff's application for naturalization because he failed to establish that he was a person of "good moral character." Specifically, the INS noted that plaintiff had been convicted twice for driving under the influence in the five years preceding his application, and that he provided false testimony to the INS in that he answered "no" on the naturalization application when asked if he had been arrested.

16. On July 13, 2001, plaintiff filed a request for a hearing on the naturalization decision.

17. Le appeared for a hearing on March 29, 2002, along with his present counsel. At the end of the hearing, the naturalization officer gave a verbal denial on plaintiff's application.

18. On July 8, 2002, the INS issued a formal written denial of plaintiff's application for naturalization. In the written decision, the INS found that

      plaintiff lacked "good moral character" because of his two arrests for driving under the influence. The written decision did not rely on the false testimony as a basis for denying plaintiff's application.

19. Drunk driving is specifically addressed in the guidance the INS publishes for members of the public seeking information about the naturalization process. In its publication, "Who is Eligible for Naturalization," the guide explains that "to be eligible for naturalization you must be a person of good moral character." The guide then has a section listing "Examples of Things that Might Show a Lack of Good Moral Character." The list specifically includes "habitual drunkenness <u>or drunk driving</u>." (emphasis added).

20. According to data from the National Highway Traffic Safety Administration (NHTSA), in 2000, 17,380 people were killed in alcohol-related crashes - an average of one every half-hour. These deaths constituted approximately 41 percent of the 41,945 total traffic fatalities that year. In 2001, 17,448 people were killed in crashes involving alcohol, representing 41 percent of the 42,116 people killed in all traffic crashes. (New Fatality Analysis Reporting System, NHTSA, 2002). In Pennsylvania in 2001, there were 1,530 traffic related deaths, 663 of which were related to alcohol (43 percent).

21. At blood alcohol concentration levels as low as 0.02 percent, alcohol affects driving ability and crash likelihood. The probability of a crash begins to

increase significantly at 0.05 percent blood alcohol concentration and climbs rapidly after about 0.08 percent. (Insurance Institute for Highway Safety, Q&A Alcohol: General, November 2001). At .08 blood alcohol content, virtually all drivers, even experienced ones, are impaired. (NHTSA, April 2002). Thirty-one percent of all traffic fatalities occurred in crashes in which at least one driver or non-occupant had a blood alcohol content of 0.10 or greater. (NHTSA, 2000).

22. In Pennsylvania (and 14 other states), the legal limit for blood alcohol content is .10; in 34 states and the District of Columbia, the legal limit is .08.

23. According to the NHTSA, an average 170-pound man must have more than four drinks in one hour on an empty stomach to reach a .08 percent blood alcohol concentration (BAC) level - a level that exceeds what is commonly accepted as social drinking.

II. <u>CONCLUSIONS OF LAW</u>

1. A person whose application for naturalization is denied after a hearing with an immigration officer may seek review of such denial in United States District Court. <u>See</u> 8 U.S.C. § 1421(c) (1994); 8 C.F.R. § 336.9 (1999).

2. The court's review is de novo and the court shall make its own findings of fact and conclusions of law. <u>Id.</u>

3. At the request of the petitioner, the court shall conduct a hearing de novo on the application. <u>Id.</u>

4. There is no natural or inherent right to become a United States citizen. <u>Puciaty v. INS</u>, 125 F.Supp.2d 1035, 1038 (D.Haw. 2000).

5. Citizenship is a "gift or a privilege which the government may refuse or may grant on such conditions as it may prescribe." <u>Schneiderman v. United States</u>, 320 U.S. 118, 131 (1943). "[T]he Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship." <u>Berenyi v. District Director</u>, 385 U.S. 630, 637 (1967).

6. In a proceeding for naturalization, because the applicant is seeking to receive all the privileges and benefits of citizenship which cannot lightly be taken away, "it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." <u>Berenyi</u>, <u>supra</u>, 385 U.S. at 637; <u>see also</u> 8 U.S.C. § 1427(e); 8 C.F.R. §§ 316.2(b) &

    316.10(a)(1).

7. "No alien has the slightest right to naturalization unless all statutory requirements are complied with ...." U.S. v. Ginsberg, 243 U.S. 472, 475 (1917).

8. All doubts are resolved in favor of the United States and against the petitioner. Berenyi, supra, 385 U.S. at 637; Puciaty, supra, at 1038.

9. The "congressionally imposed prerequisites" for naturalization are found generally in 8 U.S.C. § 1427(a), which provides: "No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) ... has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ..., (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character...." 8 U.S.C. § 1427(a). Le has met the first and second requirements.

10. In order to be naturalized, an applicant must establish that during the statutory period, the alien must be "person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." See 8 U.S.C. § 1427(a)(3).

11. The 'statutory period" refers to the five-year period immediately preceding the filing of the petition, which in this case was October 3, 2001.

12. The statute provides that an applicant for naturalization shall not be found to be a person of "good moral character" if the applicant is or was during the five year period preceding the application:

    (1) a habitual drunkard;

    (2) a person illegally connected with prostitution, who helps to smuggle aliens, or is a previously removed alien;

    (3) convicted of, or admits committing, crimes listed in 8 U.S.C. § 1182(A)--(C);

    (4) a person whose income is derived principally from illegal gambling;

    (5) a person convicted of two or more gambling offenses during the statutory period;

    (6) a person who gave false testimony to obtain benefits under the INA;

    (7) a person confined to a penal institution for 180 days or more by any conviction, even if the offense did not occur within the statutory period;

    (8) a person convicted of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), at any time.

See 8 U.S.C. § 1101(f).

13. Federal regulations provide an even lengthier list of conduct for which an applicant shall be automatically found to lack good moral character,

        overlapping a great deal with listed offenses in 8 U.S.C. § 1101(f), and adding actions such as failure to support dependents, polygamy, and having an extramarital affair which tended to destroy an existing marriage. See 8 C.F.R. § 316.10.

14. Neither the list of conduct in § 1101(f) or that in the regulations is exhaustive. "In other words, the inquiry into whether a person possesses good moral character does not end when the decision maker reaches the bottom of these lists." Puciaty v. INS, 125 F.Supp.2d 1035, 1039 (D.Haw. 2000).

15. As the statute specifically states, "the fact any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. § 1101(f).

16. Similarly to § 1101(f), the regulations make clear that the listed elements are not an exhaustive list of conduct precluding a finding of good moral character. See 8 C.F.R. § 316.10(a)--(b) (determinations of good moral character are made on a "case-by-case basis" and take into account the elements enumerated in § 316.10(b) and the standards of the average citizen in the community of residence). See also Charles Gordon et al., 15 Immigration Law and Procedure, Interpretations of the Immigration and Naturalization Service, § 316.1(e), at 130 (1993) ("Good moral character ... has been interpreted as meaning character which measures up to the

standards of average citizens of the community in which the applicant resides."). Therefore, "when making a determination of good moral character, [the court] should look to the statute and the regulations, but if conduct complained of does not fall within their enumerated categories, it must continue its analysis by looking to the 'standards of average citizens.'" Puciaty, 125 F.Supp.2d at 1039.

17. Plaintiff's convictions for drunk driving show that Le has "committed unlawful acts that adversely reflect upon [his] moral character." 8 CFR 316.10(b)(3)(iii).

18. Drunk driving violates the standards of average citizens in our society. To allow Le to be caught engaging in such conduct twice within the five years preceding his application, and still grant him one of the most sought after privileges in the world, that of becoming a United States citizen, would undermine the strict guidelines set forth by Congress. See In re Swensen, 61 F.Supp. 376, 377 (D.Ore. 1945) (court found that a man could not be naturalized in part because of his driving while intoxicated).

19. Immigrants who are applying for naturalization are subject to a higher standard of conduct than a native-born citizen:

20. "A native-born citizen need not be literate to exercise his civil rights, unless the state law so requires. But an alien must know the English language. . . . No matter how well educated he might be in other languages, ignorance of

English is a bar to citizenship. A native-born citizen may be immoral . . . . But an alien must be of good moral character before he can be admitted to citizenship. . . . More, a native-born citizen may be opposed to the principles of our constitutional government. And, unless he actually advocates its overthrow, by force, he may go unmolested. But an alien must be 'attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." In re Swensen, 61 F.Supp. 376, 377 (D.Ore. 1945).

21. Le exhibited extraordinarily poor judgment on at least two different occasions, driving while intoxicated at levels that could easily have resulted in tragedy. Such conduct is properly considered not of "good moral character."

22. Courts traditionally give deference to the Service in immigration matters. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("judicial deference to the Executive Branch is especially appropriate in the immigration context."); Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001) ("Our analysis, of course, is constrained by the great deference we owe to the INS in immigration matters."). In the area of naturalization and good moral character, the Service has determined in its publication "Who is Eligible for Naturalization" that drunk driving is evidence that shows a lack of good moral character.

23. Pursuant to 8 U.S.C. § 1423, Le must demonstrate "an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language: Provided, That the requirements of this paragraph relating to the ability to read and write shall be met if the applicant can read or write simple words and phrases to the end that a reasonable test of his literacy shall be made and that no extraordinary or unreasonable condition shall be imposed upon the applicant." 8 U.S.C. § 1423(a)(1).

24. Plaintiff Tuan Le's petition for naturalization is denied because he has not met the requirement of establishing good moral character within the five year statutory period preceding the filing of his application for naturalization. In addition, plaintiff's petition for naturalization is denied because he has not met the English language requirement.

25. Plaintiff's petition is denied without prejudice for him to refile at least five years after his last conviction for drunk driving. Pursuant to the Third Circuit Court of Appeal's decision in Perez v. Elwood, 294 F.3d 552 (3d Cir. 2002), the term "conviction" is defined for purposes of the Immigration and Nationality Act as the date when the court imposed its sentence. Id. at 562. Thus, Le may reapply for naturalization on or after January 12, 2006.

                                       Respectfully submitted,

                                PATRICK L. MEEHAN
                                United States Attorney

                                _____

                                JAMES G. SHEEHAN
                                Assistant United States Attorney
                                Chief, Civil Division

Dated: November 15, 2002        _____
                                SUSAN R. BECKER
                                Assistant United States Attorney
                                615 Chestnut Street, Suite 1250
                                Philadelphia PA 19106-4476
                                (215) 861-8310 Telephone
                                (215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2002, I caused a true and correct copy of the foregoing Defendant's Findings of Fact and Conclusions of Law to be served by Federal Express upon the following:

> Joseph I. McDevitt
> Suite 400, Four Tower Bridge
> 200 Barr Harbor Drive
> West Conshohocken, PA 19428
>
> Attorney for Plaintiff

_____
Susan R. Becker