IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUAN V. LE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 02-CV-3368 |
| KENNETH JOHN ELWOOD | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S POST-HEARING
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The United States of America, by its attorneys, Patrick L. Meehan, United

States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant

United States Attorney for the District, on behalf of defendant, Kenneth Elwood, District

Director of the Immigration and Naturalization Service ("the Service"), submits these

findings of fact and conclusions of law following the hearing held on January 14, 2003 at

10:30 a.m. relating to plaintiff Tuan V. Le's application for citizenship.

**I.    FINDINGS OF FACT**

1.    Plaintiff Tuan V. Le is a native and citizen of Vietnam.  (See Naturalization

Application, Govt. Exhibit 3).

2.    Plaintiff was born on February 20, 1973 in Vietnam.  (Id.).

3.    On July 20, 1993, plaintiff became a permanent resident of the United

States.  (Id.).

4.     On December 28, 1996, plaintiff was arrested for driving under the

       influence by the Philadelphia Police Department when his motor vehicle

       was stopped at or near 1000 S. 16th Street, Philadelphia, PA.  (See Govt.

       Exhibit 1).

5.     At the time of his 1996 arrest, plaintiff had a blood alcohol content of .16

       percent.  (Id.).

6.     The legal limit in Pennsylvania for blood alcohol content is .10 percent.

7.     Plaintiff spent the night in jail following his arrest.

8.     Plaintiff was charged with violation of Pennsylvania Crimes Code Section

       3731- a misdemeanor of the second degree.  (See Govt. Exhibit 1).

9.     On February 24, 1997, plaintiff was found guilty and was sentenced on May

       12, 1997 to 48 hours confinement, one year probation and required to

       complete alcohol safe driving school.   In addition, his driver's license was

       suspended for one year.  (Id.).

10.    On November 13, 1999, plaintiff was again arrested for driving under the

       influence by the Philadelphia Police Department when his motor vehicle

       was stopped at or near 800 East Allegheny Avenue, Philadelphia, PA.  (See

       Govt. Exhibit 2).

11.    At the time of plaintiff's 1999 arrest, his blood alcohol content level was

.186 percent, nearly twice the legal limit.  (<u>Id.</u>).

12.    Plaintiff spent the night in jail following his arrest.

13.    Plaintiff was charged again with violation of Pennsylvania Crimes Code

Section 3731.  (<u>Id.</u>)

14.    On June 14, 2000, Le was adjudicated guilty on the charge.  On January 11,

2001, the judge sentenced Le to 48 hours confinement, one year probation

and was required to complete alcohol safe driving school.  In addition, his

driver's license was suspended for one year.  (<u>Id.</u>)

15.    On October 3, 2000, plaintiff applied for naturalization by submitting a

form N-400 and supporting documents to the Immigration & Naturalization

Service (INS) at Philadelphia.  (See Govt. Exhibit 3).

16.    On May 16, 2001, plaintiff appeared for an examination before an INS

Officer regarding his application for naturalization.

17.    On June 15, 2001, the INS denied plaintiff's application for naturalization

because he failed to establish that he was a person of "good moral

character."  Specifically, the INS noted that plaintiff had been convicted

twice for driving under the influence in the five years preceding his

application, and that he provided false testimony to the INS in that he

answered "no" on the naturalization application when asked if he had been

arrested.  (See Govt. Exhibit 4).

18.  On July 13, 2001, plaintiff filed a request for a hearing on the naturalization decision.  (See Govt. Exhibit 5).

19.  Le appeared for a hearing on March 29, 2002, along with his present counsel.  At the end of the hearing, the naturalization officer gave a verbal denial on plaintiff's application.

20.  On July 8, 2002, the INS issued a formal written denial of plaintiff's application for naturalization.  In the written decision, the INS found that plaintiff lacked "good moral character" because of his two arrests for driving under the influence.  The written decision did not rely on the false testimony as a basis for denying plaintiff's application.  (See Govt. Exhibit 6).

21.  Drunk driving is specifically addressed in the guidance the INS publishes for members of the public seeking information about the naturalization process.  In its publication, "Who is Eligible for Naturalization," the guide explains that "to be eligible for naturalization you must be a person of good moral character."  The guide then has a section listing "Examples of Things that Might Show a Lack of Good Moral Character."  The list  specifically includes "habitual drunkenness or drunk driving."  (emphasis added).  (See Govt. Exhibit 7, p.17).  This same list appears in the Guide to Naturalization (revised 12/00).  (See Govt. Exhibit 8, p.25).

22. According to data from the National Highway Traffic Safety Administration (NHTSA), in 2000, 17,380 people were killed in alcohol-related crashes - an average of one every half-hour.  These deaths constituted approximately 41 percent of the 41,945 total traffic fatalities that year.  In 2001, 17,448 people were killed in crashes involving alcohol, representing 41 percent of the 42,116 people killed in all traffic crashes. (New Fatality Analysis Reporting System, NHTSA, 2002).  In Pennsylvania in 2001, there were 1,530 traffic related deaths, 663 of which were related to alcohol (43 percent).  (See Govt. Exhibits 9, 10 and 12).

23. At blood alcohol concentration levels as low as 0.02 percent, alcohol affects driving ability and crash likelihood. The probability of a crash begins to increase significantly at 0.05 percent blood alcohol concentration and climbs rapidly after about 0.08 percent. (Insurance Institute for Highway Safety, Q&A Alcohol: General, November 2001).  At .08 blood alcohol content, virtually all drivers, even experienced ones, are impaired. (NHTSA, April 2002).  Thirty-one percent of all traffic fatalities occurred in crashes in which at least one driver or non-occupant had a blood alcohol content of 0.10 or greater. (NHTSA, 2000).  (See Govt. Exhibit 11).

24. In Pennsylvania (and 14 other states), the legal limit for blood alcohol content is .10; in 34 states and the District of Columbia, the legal limit is

.08.  (Id.)

25.    According to the NHTSA, an average 170-pound man must have more than

four drinks in one hour on an empty stomach to reach a .08 percent blood

alcohol concentration (BAC) level - a level that exceeds what is commonly

accepted as social drinking.  (Id.)

26.    At the January 14, 2003 hearing, plaintiff's sister gave uncontradicted

testimony that her brother, the plaintiff, provided the answers to the

questions on the naturalization applications, including the question about

whether he had ever been arrested.

27.    Plaintiff indicated on the application that he had never been arrested for

anything other than a traffic violation, even though he spent the night in jail

both times he was arrested, spent two additional days in jail for each

conviction, and was unable to drive for six months for each conviction.

28.    When testifying about the night of his second arrest on November 13, 1999,

plaintiff claimed that he was at a bar with his friends watching a boxing

match, and that he had drunk more than average.  When questioned about

whether he asked any of his friends to drive him home, plaintiff answered

that he had, but that none of them was ready to leave.  He then nonetheless

proceeded to drive himself home, despite his apparent acknowledgment

(based on his request to his friends) that he had had too much to drink.

29.    Plaintiff's testimony reflects a lack of understanding of both the legal and

moral code that prohibits driving while intoxicated.

## II.    CONCLUSIONS OF LAW

1.    A person whose application for naturalization is denied after a hearing with

an immigration officer may seek review of such denial in United States

District Court. See 8 U.S.C. § 1421(c) (1994); 8 C.F.R. § 336.9 (1999).

2.    The court's review is de novo and the court shall make its own findings of

fact and conclusions of law.  Id.

3.    At the request of the petitioner, the court shall conduct a hearing de novo on

the application.  Id.

4.    There is no natural or inherent right to become a United States citizen.

Puciaty v. INS, 125 F.Supp.2d 1035, 1038 (D.Haw. 2000).

5.    Citizenship is a "gift or a privilege which the government may refuse or

may grant on such conditions as it may prescribe." Schneiderman v. United

States, 320 U.S. 118, 131 (1943).  "[T]he Government has a strong and

legitimate interest in ensuring that only qualified persons are granted

citizenship." Berenyi v. District Director, 385 U.S. 630, 637 (1967).

6.    In a proceeding for naturalization, because the applicant is seeking to

receive all the privileges and benefits of citizenship which cannot lightly be

taken away, "it has been universally accepted that the burden is on the alien

applicant to show his eligibility for citizenship in every respect." <u>Berenyi</u>,

<u>supra</u>, 385 U.S. at 637; <u>see also</u> 8 U.S.C. § 1427(e); 8 C.F.R. §§ 316.2(b) &

316.10(a)(1).

7.    "No alien has the slightest right to naturalization unless all statutory

requirements are complied with ...." <u>U.S. v. Ginsberg</u>, 243 U.S. 472, 475

(1917).

8.    All doubts are resolved in favor of the United States and against the

petitioner.  <u>Berenyi</u>, <u>supra</u>, 385 U.S. at 637; <u>Puciaty</u>, <u>supra</u>, at 1038.

9.    The "congressionally imposed prerequisites" for naturalization are found

generally in 8 U.S.C. § 1427(a), which provides: "No person, except as

otherwise provided in this subchapter, shall be naturalized unless such

applicant, (1) ... has resided continuously, after being lawfully admitted for

permanent residence, within the United States for at least five years ..., (2)

has resided continuously within the United States from the date of the

application up to the time of admission to citizenship, and (3) during all the

periods referred to in this subsection has been and still is a person of good

moral character...."  8 U.S.C. § 1427(a).  Le has met the first and second

requirements.

10.    In order to be naturalized, an applicant must establish that during the

statutory period, the alien must be "person of good moral character,

attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." <u>See</u> 8 U.S.C. § 1427(a)(3).

11.   The 'statutory period" refers to the five-year period immediately preceding the filing of the petition, which in this case was October 3, 2001.

12.   The statute provides that an applicant for naturalization shall not be found to be a person of "good moral character" if the applicant is or was during the five year period preceding the application:

    (1)    a habitual drunkard;

    (2)    a person illegally connected with prostitution, who helps to smuggle aliens, or is a previously removed alien;

    (3)    convicted of, or admits committing, crimes listed in 8 U.S.C. § 1182(A)--(C);

    (4)    a person whose income is derived principally from illegal gambling;

    (5)    a person convicted of two or more gambling offenses during the statutory period;

    (6)    a person who gave false testimony to obtain benefits under the INA;

    (7)    a person confined to a penal institution for 180 days or more by any conviction, even if the offense did not occur within the statutory period;

    (8)    a person convicted of an aggravated felony, as defined by 8 U.S.C. § 1101(a)(43), at any time.

See 8 U.S.C. § 1101(f).

13.    Federal regulations provide an even lengthier list of conduct for which an
       applicant shall be automatically found to lack good moral character,
       overlapping a great deal with listed offenses in 8 U.S.C. § 1101(f), and
       adding actions such as failure to support dependents, polygamy, and having
       an extramarital affair which tended to destroy an existing marriage. See 8
       C.F.R. § 316.10.

14.    Neither the list of conduct in § 1101(f) or that in the regulations is
       exhaustive.  "In other words, the inquiry into whether a person possesses
       good moral character does not end when the decision maker reaches the
       bottom of these lists."  Puciaty v. INS, 125 F.Supp.2d 1035, 1039 (D.Haw.
       2000).

15.    As the statute specifically states, "the fact any person is not within any of
       the foregoing classes shall not preclude a finding that for other reasons such
       person is or was not of good moral character."  8 U.S.C. § 1101(f).

16.    Similarly to § 1101(f), the regulations make clear that the listed elements
       are not an exhaustive list of conduct precluding a finding of good moral
       character.  See 8 C.F.R. § 316.10(a)--(b) (determinations of good moral
       character are made on a "case-by-case basis" and take into account the

elements enumerated in § 316.10(b) and the standards of the average citizen in the community of residence).  See also Charles Gordon et al., 15 Immigration Law and Procedure, Interpretations of the Immigration and Naturalization Service,  § 316.1(e), at 130 (1993) ("Good moral character ... has been interpreted as meaning character which measures up to the standards of average citizens of the community in which the applicant resides.").  Therefore, "when making a determination of good moral character, [the court] should look to the statute and the regulations, but if conduct complained of does not fall within their enumerated categories, it must continue its analysis by looking to the 'standards of average citizens.'" Puciaty, 125 F.Supp.2d at 1039.

17.    Plaintiff's convictions for drunk driving show that Le has "committed unlawful acts that adversely reflect upon [his] moral character."  8 CFR 316.10(b)(3)(iii).

18.    Drunk driving violates the standards of average citizens in our society.  To allow Le to be caught engaging in such conduct twice within the five years preceding his application, and still grant him one of the most sought after privileges in the world, that of becoming a United States citizen, would undermine the strict guidelines set forth by Congress.  See In re Swensen, 61 F.Supp. 376, 377 (D.Ore. 1945) (court found that a man could not be

naturalized in part because of his driving while intoxicated).

19.  Immigrants who are applying for naturalization are subject to a higher

standard of conduct than a native-born citizen:

20.  "A native-born citizen need not be literate to exercise his civil rights, unless

the state law so requires.  But an alien must know the English language. . . .

No matter how well educated he might be in other languages, ignorance of

English is a bar to citizenship.  A native-born citizen may be immoral . . . .

But an alien must be of good moral character before he can be admitted to

citizenship. . . .  More, a native-born citizen may be opposed to the

principles of our constitutional government. And, unless he actually

advocates its overthrow, by force, he may go unmolested. But an alien must

be 'attached to the principles of the Constitution of the United States, and

well disposed to the good order and happiness of the United States." In re

Swensen, 61 F.Supp. 376, 377 (D.Ore. 1945).

21.  Le exhibited extraordinarily poor judgment on at least two different

occasions, driving while intoxicated at levels that could easily have resulted

in tragedy.  Such conduct is properly considered not of "good moral

character."

22.  Courts traditionally give deference to the Service in immigration matters.

See  INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("judicial deference

to the Executive Branch is especially appropriate in the immigration
context."); Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001) ("Our
analysis, of course, is constrained by the great deference we owe to the INS
in immigration matters.").  In the area of naturalization and good moral
character, the Service has determined in its publication "Who is Eligible for
Naturalization" that drunk driving is evidence that shows a lack of good
moral character.

23.    Pursuant to 8 U.S.C. § 1423, Le must demonstrate "an understanding of the
English language, including an ability to read, write, and speak words in
ordinary usage in the English language: Provided, That the requirements of
this paragraph relating to the ability to read and write shall be met if the
applicant can read or write simple words and phrases to the end that a
reasonable test of his literacy shall be made and that no extraordinary or
unreasonable condition shall be imposed upon the applicant."  8 U.S.C. §
1423(a)(1).

24.    Plaintiff Tuan Le's petition for naturalization is denied because he has not
met the requirement of establishing good moral character within the five
year statutory period preceding the filing of his application for
naturalization.

25.    In addition, plaintiff's petition for naturalization is denied because he has

not met the English language requirement.

26.     Plaintiff's petition is denied without prejudice for him to refile at least five

        years after his last conviction for drunk driving.  Pursuant to the Third

        Circuit Court of Appeal's decision in <u>Perez v. Elwood</u>, 294 F.3d 552 (3d

        Cir. 2002), the term "conviction" is defined for purposes of the Immigration

        and Nationality Act as the date when the court imposed its sentence.  <u>Id.</u>

        at 562.  Thus, Le may reapply for naturalization on or after January 12,

        2006.

                                        Respectfully submitted,

                                        PATRICK L. MEEHAN
                                        United States Attorney


                                        _____
                                        VIRGINIA A. GIBSON
                                        Assistant United States Attorney
                                        Chief, Civil Division


Dated: January 29, 2003                 _____
                                        SUSAN R. BECKER
                                        Assistant United States Attorney
                                        615 Chestnut Street, Suite 1250
                                        Philadelphia PA 19106-4476
                                        (215) 861-8310 Telephone
                                        (215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2003, I caused a true and correct

copy of the foregoing Defendant's Post-Hearing Findings of Fact and Conclusions of

Law to be served by first-class mail, postage-prepaid, upon the following:

> Joseph I. McDevitt
> Suite 400, Four Tower Bridge
> 200 Barr Harbor Drive
> West Conshohocken, PA 19428
>
> Attorney for Plaintiff

_____

Susan R. Becker