IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TUAN V. LE,

      Plaintiff

                                 Civil Action

                                 NO. 02-cv-3368

KENNETH JOHN ELWOOD,

      Defendant

## Adjudication of Petition for Review of Denial of Naturalization Application

Plaintiff Tuan V. Le petitions for review of the denial of his naturalization application by the Immigration and Naturalization Service.  8 U.S.C. § 1421(c).  [1]

On June 15, 2001, following an in-person examination on May 16, 2001, the INS denied plaintiff's naturalization application.  On July 13, 2001, plaintiff requested an INS hearing, which was held on March 28, 2002.  At that time, INS informed him that his application was again denied and, on July 8, 2002 issued a written statement to that effect.

On May 29, 2002, plaintiff filed a petition for review and, on January 14, 2003, this Court held a hearing.  By statute, the review is *de novo*, with findings of fact and

---

[1] 8 U.S.C. § 1421(c):

A person whose application for naturalization under this sub-chapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

conclusions of law.  The denial by INS of the naturalization application was based on its conclusion that plaintiff, under the naturalization act, was not a person of "good moral character." 8 U.S.C. § 1427(a)(3).  The factual predicate for that decision - which he admitted at the examination and the hearing, but not in his application - was that he had been convicted twice within the previous five years of driving while under the influence of alcohol.

<u>Findings of Fact</u>

On February 20, 1973 plaintiff Tuan V. Le was born in Vietnam and, on July 20, 1993, became a permanent resident of the United States, having accompanied his parents here some years before.  On December 28, 1996  plaintiff was arrested in Philadelphia for driving under the influence.  75 Pa. C.S. § 3731.  His blood alcohol content was .16 percent, a misdemeanor under 75 Pa. C.S. § 3731. [2]   On February 24, 1997, he was found guilty and sentenced to 48 hours in prison, one year probation, and completion of alcohol safe-driving school.  His driver's license was suspended for one year.

On November 13, 1999, he was arrested again in Philadelphia, this time for driving with a blood alcohol content of .186, also a misdemeanor under  75 Pa. C.S. § 3731.  On June 14, 2000, he was found guilty and received the same sentence.

In his application for naturalization, which was filled out by his younger sister, he did not include the convictions, since both thought they were "driving citations" and as such were exceptions to the criminal history question on the application form. He admitted the convictions at his INS appearances.

---

[2]  Under Pennsylvania law, blood alcohol of .10% or higher establishes a violation. 75 Pa. C..S. § 3731.

Plaintiff's English language skills, while somewhat limited, appear to be adequate within the meaning of 8 U.S.C. 1423(a)(1).

## Discussion

No person, except as otherwise provided in this subchapter, shall b naturalized unless such applicant, (1) . . . has resided continuously , after being lawfully admitted for permanent residence, within the United States for at least five years . . ., (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character . . . ."

8 U.S.C. § 1427(a).

Section 1101(f):

f) For the purposes of this chapter--
No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
(1) a habitual drunkard;
(2) Repealed. Pub.L. 97-116, § 2(c)(1), Dec. 29, 1981, 95 Stat. 1611.
(3) a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (9)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;
(4) one whose income is derived principally from illegal gambling activities;
(5) one who has been convicted of two or more gambling offenses committed during such period;
(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;
(7) one who during such period has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;
(8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

The fact that any person is not within any of the foregoing classes

shall not preclude a finding that for other reasons such person is or was not of good moral character.

8 U.S.C. § 1101(f).

Good character evaluations are made on a case-by-case basis, taking into account the enumerated elements and the standards of the average citizen in the community of residence. 8 C.F.R. § 316.10(a). [3]

---

[3] 8 C.F.R. § 316.10(b) lists elements to be considered in finding of a lack of good moral character, providing:
(1) An applicant shall be found to lack good moral character, if the applicant has been:
(i) Convicted of murder at any time; or
(ii) Convicted of an aggravated felony as defined in section 101(a)(43) of the Act on or after November 29, 1990.
(2) An applicant shall be found to lack good moral character if during the statutory period the applicant:
(i) Committed one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted, except as specified in section 212(a)(2)(ii)(II) of the Act;
(ii) Committed two or more offenses for which the applicant was convicted and the aggregate sentence actually imposed was five years or more, provided that, if the offense was committed outside the United States, it was not a purely political offense;
(iii) Violated any law of the United States, any State, or any foreign country relating to a controlled substance, provided that the violation was not a single offense for simple possession of 30 grams or less of marijuana;
(iv) Admits committing any criminal act covered by paragraphs (b)(2) (i), (ii), or (iii) of this section for which there was never a formal charge, indictment, arrest, or conviction, whether committed in the United States or any other country;
(v) Is or was confined to a penal institution for an aggregate of 180 days pursuant to a conviction or convictions (provided that such confinement was not outside the United States due to a conviction outside the United States for a purely political offense);
(vi) Has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit;
(vii) Is or was involved in prostitution or commercialized vice as described in section 212(a)(2)(D) of the Act;
(viii) Is or was involved in the smuggling of a person or persons into the United States as described in section 212(a)(6)(E) of the Act;
(ix) Has practiced or is practicing polygamy;
(x) Committed two or more gambling offenses for which the applicant was convicted;
(xi) Earns his or her income principally from illegal gambling activities; or
(xii) Is or was a habitual drunkard.
(3) Unless the applicant establishes extenuating circumstances, the applicant shall be found to lack good moral character if, during the statutory period, the applicant:
(i) Willfully failed or refused to support dependents;
(ii) Had an extramarital affair which tended to destroy an existing marriage; or
(iii) Committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts, although the acts do not fall within the purview of § 316.10(b) (1) or (2).

A person applying for naturalization must be able to read, write and speak words in ordinary use in the English language.  This requirement is met if the applicant can read and write simple words and phrases in English.  8 U.S.C. 1423(a)(1).

The statutory period within which a plaintiff is required to prove good moral character is the minimum period for residency in the United States - five years.  8 U.S.C. § 1427(a)(3).  "The burden is on the applicant to show his eligibility in every respect." Berenyi v. INS, 385 U.S. 630, 637 (1967).  Doubts are resolved against the petitioner. Berenyi, 385 U.S. at 637. [4]

An INS publication, "Who is Eligible for Naturalization," contains a list of "Examples of Things that Might Show a Lack of Good Moral Character," which includes "habitual drunkenness or drunk driving."  (INS, 1999)

On the other hand,  Puciaty v. U.S. Dept. of Justice, I.N.S., 125 F.Supp.2d 1035, 1039 (D.Hawaii 2000), reversed INS and granted naturalization despite two convictions for driving while intoxicated and the applicaant's non-payment of a civil judgment. Puciaty at 1039.  ("Finally, with the exception of two arrests for driving under the influence . . . to which he pleaded no contest, he has been a law abiding resident.")

While by themselves plaintiff's DUI convictions in 1996 and 2000 may not disqualify him from being a person of "good moral character," they are negative factors that lead to an examination of the circumstances.  The evidence does not amount to a finding of "habitual drunkard"; but the blood alcohol contents shown by

---

[4] The government cites In re Swensen, 61 F.Supp. 376, 377 (D. Ore. 1945), as an apposite drunk driving case. There, the applicant was "making moonshine" and also attempted to mislead the court.  Id.

the two test results - .16 and .186 - cast great doubt on the testimonial credibility of plaintiff's proverbial "two beers or so." [5]  Moreover, other doubts were created by the plaintiff's testimony, e.g., as to his drinking alcohol on just one occasion per month, which coincidentally resulted in the two drunk driving convictions - as well as his inability to account in either instance for why he was being stopped and arrested. Such lack of testimonial candor, although not necessarily "false testimony," is not consistent with "good moral character." [6]

Plaintiff's occupational record and assistance to his family are positive and commendable factors.  If there are no further negative marks within five years after his 2000 adjudication of guilt - i.e., 2005 - he should be a successful candidate for naturalization. [7]

---

[5] According to a blood alcohol content chart based upon data supplied by the Pennsylvania Liquor Control Board, test results of .16 and .186 percent for men 10-160 pounds show consumption of six to eight 12 ounce bottles of beer. **http://www.lcb.state.pa.us/edu/adults/Chart.asp**

[6] Any applicant who within the five-year period has given false testimony for purpose of obtaining any benefits under the Immigration and Nationality Act, may not be found to be a person of good moral character. §§ 101(f), 336(d); 8 U.S.C.A. §§ 1101(f), 1447(d).  A finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given within the meaning of 8 U.S.C. § 1101(f)(6). Vallesteros v. I.N.S., 103 F.3d 143 (9th Cir. 1996); Tan v. U.S. Dept. of Justice, I.N.S., 931 F.Supp. 725, 731 (D. Hawaii 1996).

[7] INS now argues, citing Perez v. Elwood, 294 F. 3d 552 (3d Cir. 2002), that plaintiff cannot reapply until January 12, 2006, five years after he was sentenced for his last conviction.  This is contrary to its representations during the hearing, Hearing Transcript 1/14/03 at 54-59, in which it agreed to be bound by the date of his guilty plea in 2000 or even earlier, the date of the offense in 1999.  Further, Perez is inapplicable.  "Conviction" means a formal judgment of guilt of the alien by the court or, **if** adjudication of guilt has been withheld, where – . . . (ii) the judge has ordered some form of punishment, penalty or restraint on the alien's liberty to be imposed."  8 U.S.C.  § 1101(a) (emphasis added).  That decision found that, for purposes of the Immigration and Naturalization Act, Perez's conviction was the date of his sentence rather than the date of his conviction because after sentencing, the court filed a document captioned "Judgment in a criminal case."  Le was "adjudged guilty" on June 14, 2000.  Record 01017676, Commonwealth v. Le (2001). The five years period begins to run on that date.

INS stipulated at the hearing in this Court that it would not consider the prior convictions in a subsequent petition that post-dated the 2000 conviction by five years. [8]

## Conclusions

1. This Court has jurisdiction over plaintiff's petition for review of the denial of his naturalization application.

2. By statute, the review is *de novo*, and plaintiff has the evidentiary burden to show that during the five years preceding the application, he was a person of good moral character.

3. Plaintiff did not meet that burden because, in addition to the misdemeanors convictions for driving under the influence of alcohol, material portions of his testimony lacked credibility to a serious degree.

4. The petition for review is denied without prejudice to a new application five years after the 2000 conviction.

5. INS is bound by its stipulation not to consider the two prior convictions upon such application.

_____
Edmund V. Ludwig, J.

---

[8] INS appears to have abandoned the argument that plaintiff's failure to include the convictions on his naturalization application was "false testimony."